UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REINA FEARN STEPHENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-508-AMG |
| ) | |
| KILOLO KIJAKAZI, ) | |
|   Acting Commissioner of the ) | |
|   Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Reina Fearn Stephenson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 13, 14), and the parties have fully briefed the issues (Docs. 18, 20, 21).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 8, 17). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

I.      **Procedural History**

Plaintiff filed an application for DIB on June 23, 2020, alleging a disability onset date of February 21, 2018. (AR, at 201-02). The SSA denied the application initially and on reconsideration. (*Id.* at 60, 79-87, 88, 90-107).[2] An administrative hearing was held on August 11, 2021. (*Id.* at 31-59). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 13-24). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-4). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II.     **Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from February 21, 2018, the alleged onset date, to September 30, 2018, the date her insured status expired. (AR, at 17-18). At Step Two, the ALJ found that Plaintiff had a severe impairment of major depressive disorder. (*Id.* at 18). At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*) The ALJ then determined that Plaintiff had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to performing simple, routine, repetitive tasks." (*Id.* at 19). Then, at Step Four, the ALJ found that Plaintiff could

---

[2] Plaintiff also applied for supplemental security income benefits on June 23, 2020, under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, and the SSA denied the same. (AR, at 62, 64-78).  Plaintiff did not request reconsideration of, nor did she appeal the SSA's determination in in that regard.

2

perform her past relevant work as a farm laborer, "a heavy exertion level unskilled job with an SVP-2." (*Id.* at 22.) Thus, the ALJ found that Plaintiff had not been under a disability from February 21, 2018, to September 30, 2018. (*Id*. at 23).

## III. Claims Presented for Judicial Review

Plaintiff contends the ALJ erred at Step Two of the sequential evaluation process by failing to find that she suffered from any severe physical impairments. (Doc. 18, at 13). More specifically, she contends that although the relevant time period to her Social Security disability claim is limited to approximately seven months, the ALJ failed to consider medical evidence from before and after that time period that was relevant to proving that her physical impairments were severe. (*Id.* at 14-18). She also contends the ALJ failed to consider her physical impairments in determining the RFC. (*Id.* at 18-9).

The Commissioner contends the ALJ properly evaluated all medical evidence of record "at step two and throughout the evaluation process." (Doc. 20, at 4). She argues the ALJ's determination that Plaintiff did not suffer from any severe physical impairments and/or that no limitations arose from the same is supported by substantial evidence of record. (*Id.* at 5-14).

## IV. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see* 20 C.F.R. § 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of

---

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

4

the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant is entitled to disability benefits only if [claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quotations and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will

"neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**V.     The ALJ Properly Considered Plaintiff's Physical Impairments.**

Plaintiff initially frames her issue on appeal as the ALJ erring in Step Two of the sequential evaluation process by failing to find Plaintiff's physical impairments severe. (Doc. No. 18, at 13-14). At Step Two, the issue before the ALJ is whether the claimant suffers from at least one "severe" medically determinable impairment. *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009). "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quoting *Bowen*, 482 U.S. at 156 (O'Connor, J., concurring)). In circumstances where an ALJ deems at least one impairment severe and proceeds to the remaining steps of the evaluation, any error at Step Two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at Step Two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Here, the ALJ found one severe impairment and proceeded through the remaining steps of the sequential evaluation. Thus, Plaintiff sustained her burden of proof at Step Two by demonstrating the existence of a medically determinable severe impairment, and the ALJ did not commit reversible error in failing to identify other impairments as "severe."

6

However, construing Plaintiff's additional arguments broadly, she also asserts that the ALJ erred in Step Four by not including any physical limitations in the RFC. Notably, Plaintiff fails to identify any specific limitations the ALJ should have included. Nevertheless, the Court will address Plaintiff's arguments as asserted.

Plaintiff first contends the ALJ erred by limiting her consideration of Plaintiff's medical records to the time period relevant to her disability claim, February 21, 2018, through September 30, 2018. It is well established that an ALJ should consider medical records that precede the disability onset date or follow the date of last insured if they shed light on Plaintiff's condition and/or limitations. *See Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006) (remanding for further proceedings in light of medical evidence generated one year after the plaintiff's last-insured date indicating he had significant pain-producing arthritis); *Frost v. Saul*, No. CIV-19-444-J, 2020 WL 68586, at *3 (W.D. Okla. Jan. 7, 2020) ("Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered.").

Plaintiff's medical records pertaining to physical impairments are related to primarily to her knees, back, and shoulder.[4] At both Steps Two and Three, the ALJ discussed Plaintiff's records from both before and after the relevant time period. She noted that Plaintiff had been treated for "right knee pain going back to 2016." (AR, at 20). She specifically noted that Plaintiff had a right knee x-ray in August 2016 that showed

---

[4] Plaintiff's records also indicate possible problems with her hands; however, she does not rely on any hand related impairment on appeal.

7

"moderate joint effusion, medial and patellofemoral joint narrowing, but no acute bony findings and no acute pathology." (*Id.*)

Plaintiff contends that the 2016 x-ray is the only medical record related to Plaintiff's knees that the ALJ considered because it is the only record she specifically referenced. However, the decision indicates the ALJ did consider Plaintiff's subsequent medical records pertaining to her knee. The ALJ explained that in July and August 2017, Plaintiff's musculoskeletal examinations revealed normal strength, sensation, range of motion in her knees, and that she exhibited a normal gait. (AR, at 18 (citing AR, at 329, 520, 538)). Additionally, the ALJ specifically noted Plaintiff's relatively mild medical treatment for her knee difficulties, explaining that Plaintiff "was *occasionally* treated with medication, including prescription pain medication and anti-inflammatory medication, as well as over the counter medication." (AR, at 18) (emphasis added). In describing Plaintiff's long term medical treatment, the ALJ inherently considered Plaintiff's records documenting such treatment that fell outside of the relevant time period. (AR, at 315-16, 319-21, 323, 328-30, 334, 344, 346-48, 350-51, 354, 356-57, 358-60).[5]

In her decision, the ALJ also discussed Plaintiff's shoulder impairments and related medical treatment. (AR, at 18, 21). The ALJ noted that on May 2, 2018, Plaintiff exhibited normal range of motion in her shoulders bilaterally with only minor pain in her right shoulder with abduction. (AR, at 18, 21, 324). The record from the May 2018 visit also

---

[5] Notably, in November 2016, Physician Assistant Kyle Gray referred Plaintiff for an MRI on her knee and for physical therapy; however, it appears Plaintiff never completed either of these referrals. (AR, at 328, 337-38, 347).

indicated that Plaintiff had a "normal Apley scratch test, normal crossarm test, positive Hawkins sign, negative empty can test, also negative infraspinatus/teres minor and subscapularus testing." (AR, at 324).

The only medical evidence upon which Plaintiff relies in arguing that the ALJ did not properly consider records or treatment pertaining to her shoulder is from October 13, 2020. (Doc. 18, at 16). On that date, Plaintiff exhibited bilateral shoulder tenderness to palpation with crepitus present. (AR, at 388). However, this record is two years after Plaintiff's disability onset date and there is no medical evidence indicating that Plaintiff was suffering more than mild shoulder pain noted in 2018 both during and immediately after the relevant time period. *See Lane v. Berryhill*, 2019 WL 355279, at *3 (D.N.M. Jan. 29, 2019) (finding that medical records based on examinations both 15 months and two and one-half years after date of last insured too far removed to shed light on Plaintiff's limitations during relevant time period, especially where records did not indicate limitations would have been previously present); *see also, cf., Kimbley v. Barnhart*, 2005 WL 8164248, at *7 (D.N.M. Feb. 9, 2005) (affirming the ALJ's credibility analysis where medical records from almost one year after date of last insured showed the plaintiff's severe back pain may have recurred but finding such evidence did not support finding of disability during relevant time period). Indeed, the ALJ specifically stated in her decision that the evidence in the record did not show significant symptoms arising from any of Plaintiff's physical impairments until 2020, the date of the records upon which Plaintiff relies. (AR, at 20). This analysis indicates the ALJ considered Plaintiff's medical records after the date of last insured.

Finally, Plaintiff relies on medical records pertaining to her hips and back to argue the ALJ erred by not finding severe impairments or physical limitations related to the same. During an October 2020 examination, Plaintiff displayed a decreased range of motion in her hip adduction bilaterally when standing at a neutral position, specifically 15/20, and lying on her side, specifically 20/40. (AR, at 382, 388).[6]

With regard to Plaintiff's back, an x-ray performed during the October 2020 examination revealed endplate spurring with intervertebral disc space narrowing at L2/3 through L5/S1, most pronounced at L5/S1 showing severe narrowing. (AR, at 389). While Plaintiff reported joint pain, and the examining physician assessed her with the same, she maintained lower extremity strength, normal range of motion, and no tenderness or muscle spasms in either the lumbosacral or cervical spine. (AR, at 385). Similar to Plaintiff's alleged shoulder limitations, there is no basis in the record to conclude that these relatively minor findings regarding Plaintiff's hips and back two years after her date of last insured are relevant to any limitations Plaintiff may have been suffering during the time period relevant to her claim. *See Lane, Kimbley, supra.* Moreover, to the extent Plaintiff's limitations may have appeared and/or increased following her date of last insured, the ALJ acknowledged this by stating that Plaintiff did not exhibit any significant symptoms related to physical impairments until 2020. (AR, at 20).

Most significant to this analysis, Plaintiff fails to articulate a specific limitation she experienced from her physical impairments, severe or otherwise, that the ALJ erroneously

---

[6] On this same date, Plaintiff's hip extension, flexion, and rotation were normal. (AR, at 382).

failed to include in the RFC. This omission is fatal to Plaintiff's claim. *See McAnally v. Astrue,* 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate judge that, with regard to her hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations.") (quotation marks and brackets omitted); *Denman v. Saul,* No. CIV-18-640-G, 2019 WL 4059185, at *4 (W.D. Okla. Aug. 28, 2019) (affirming the ALJ's RFC where the plaintiff "fail[ed] to identify the specific limitations he believes were . . . [erroneously] omitted from the RFC."); *Woods v. Colvin*, No. CIV-13-763-HE, 2014 WL 2801301, at *5 (W.D. Okla. May 28, 2014) (rejecting the plaintiff's challenge to ALJ's consideration of physical impairment where claimant "fail[ed] to state what 'sufficient limitations' the ALJ *should* have included"), *adopted*, 2014 WL 2801304 (W.D. Okla. June 19, 2014); *Morgan v. Berryhill,* No. CIV-17-413-BMJ, 2018 WL 652335, at *6 (W.D. Okla. Jan. 31, 2018) (affirming the Commissioner's decision where the plaintiff failed to identify "any additional functional limitations that the ALJ should have included" in the RFC).

## VI.     Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 12th day of April, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE